Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorneys for Plaintiff*
*and the Putative Classes*

[Additional attorneys listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff John Doe ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants GoodRx Holdings, Inc. ("GoodRx"), Criteo Corp. ("Criteo"), Meta Platforms, Inc. ("Meta" or "Facebook"), and Google LLC ("Google") (collectively, "Defendants"), and makes the following allegations based on personal knowledge as to facts pertaining to his own experiences and on information and belief as to all others:

## NATURE OF THE ACTION

1.      GoodRx is an online provider of discounts on prescription medicine. GoodRx promised users of its website and mobile app that it restricts how and with whom it shares confidential and sensitive personally identifiable and protected health information ("PII/PHI") provided by users. GoodRx also represented that it restricts third parties' use of PII/PHI, that it complies with HIPAA privacy rules and

Digital Advertising Alliance principles and procedures for protecting and sharing PII/PHI, and that it would never share PII/PHI with advertisers or other third parties.

2.    These representations were false. Contrary to these representations, GoodRx shared and sold millions of users' PII/PHI as a regular course of business to the most notorious and high profile data collectors and advertisers—including Facebook, Google, and Criteo—for unauthorized and unlawful purposes, including advertising and data analytics. GoodRx did this without disclosing its sharing practices with users, actively misrepresenting its sharing practices, and without obtaining users' consent.

3.    GoodRx also used users' PII/PHI to engage in targeted advertising campaigns for its own services in violation of its promises, purported policies, industry standards, and laws. GoodRx assembled the PII/PHI obtained from users of its website and mobile app, and used that information to send advertisements to Facebook and Instagram users who had used its website.

4.    GoodRx induced its customers to share their PII/PHI using these false promises and assurances that it would safeguard PII/PHI, and Plaintiff and Class members reasonably relied on these assurances and promises and GoodRx's omissions of material facts, by disclosing their PII/PHI to GoodRx in order to obtain prescription medications at a discount.

5.    The kinds of information GoodRx solicited and permitted to be intercepted by third parties while in transit included prescription medications, personal health conditions, personal contact information, and unique advertising and persistent identifiers. GoodRx's conduct is especially egregious and reprehensible because it purposefully disproportionately preyed on the elderly, infirm, and those with chronic health conditions who often are under financial distress seeking any available means to obtain needed medications at a discount. GoodRx targets these vulnerable populations to extract their valuable and sensitive PII/PHI and breach the firewall established by laws, like HIPAA, between advertisers and healthcare providers.

6.    GoodRx, in concert with the other Defendants, violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511, *et seq*. ("ECPA"); Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. ("CMIA"); California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631;

Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and Plaintiff's and Class members' rights to privacy.

## PARTIES

7.     Plaintiff John Doe is a citizen of Illinois. Plaintiff used GoodRx between 2016 and 2021 to obtain discounts on numerous prescription medications. In seeking those discounts, Plaintiff disclosed to GoodRx personal contact information, personally identifiable information, demographic information, prescription medication information, and personal health conditions. Plaintiff never gave consent to GoodRx to share his PII/PHI with third parties. Had Plaintiff known GoodRx would share his PII/PHI with third parties for unrestricted purposes, he would never have used the website or shared his information with GoodRx.

8.     GoodRx is a Delaware corporation with its principal place of business at 2701 Olympic Boulevard, West Building, Suite 200, Santa Monica, California, 90404. GoodRx has a corporate office in San Francisco County, and certain of its employees and executives are located in San Francisco County.

9.     Facebook is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025.

10.     Google is a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

11.     Criteo Corp. is a Delaware corporation with its principal place of business located at 8840 Washington Blvd., Culver City, CA, 90232-2380.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, because this case arises under the ECPA. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). Alternatively, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiff and Defendants are diverse parties.

13.     This Court has general personal jurisdiction over Defendants because they are at home in California. The Court has specific jurisdiction over Defendants because the claims of Plaintiff and Class members arise out of Defendants' actions and omissions that occurred substantially in California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

15.     Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions that give rise to Plaintiff's and Class members' claims occurred in San Francisco County.

**COMMON FACTUAL ALLEGATIONS**

16.     GoodRx provides an online platform through its website, www.GoodRx.com and its mobile application, where consumers can search for and compare prescription medication pricing at pharmacies, and obtain prescription discount cards that provide savings on their prescription drug purchases. Since January 2017, 55.4 million consumers have visited or used GoodRx's website and mobile app.

17.     GoodRx contracts with pharmacy benefit managers ("PBMs") to offer GoodRx customers access to PBM pricing. GoodRx features a free version of its prescription discount product and a paid monthly subscription version, where users can pay a monthly fee and receive additional discounts and benefits. GoodRx receives kickbacks from PBMs when users purchase medications using GoodRx coupons.

18.     According to its web page on April 1, 2020, https://www.goodrx.com/how-goodrx-works, GoodRx stated that "GoodRx gathers current prices and discounts to help you find the lowest cost pharmacy for your prescriptions. The average GoodRx customer saved $355 a year on their prescriptions. Good Rx is 100% free. No personal information required."[1]

---

[1] Historical information on GoodRx's website was obtained using the Internet Archive Wayback Machine, www.archive.org.

19.     GoodRx also provides telehealth services under the names HeyDoctor and GoodRx Care. In connection with these offerings, GoodRx solicits and obtains PII/PHI, including contact information, demographic information, and treatment and health condition information.

### GoodRx's Statements and Promises About Handling User Data

20.     GoodRx falsely promised in its privacy policy of September 12, 2017, that "GoodRx does not sell your personal medical data." The privacy policy stated that GoodRx would share personal contact information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers.

21.     GoodRx's HeyDoctor telehealth services privacy policy states that it collected and shared user information with third-party service providers only for the limited purpose of providing access to its services. GoodRx also represented that it had in place contractual and technical protections that limit third-party use of user information and that it would seek user consent prior to sharing PII/PHI with third parties for purposes other than provision of its services.

22.     On December 14, 2019, GoodRx's CEO stated in a tweet that "People can use GoodRx without giving us any information. Any information we do receive is stored under the same guidelines as any health entity." By "health entities," the GoodRx CEO was referring to "covered entities," as that term is used in the Health Insurance Portability Accessibility and Accountability Act ("HIPAA"), which regulates, among other things, how healthcare providers obtain, handle, and share patient treatment information. In other words, GoodRx represented that it was subject to, and complied with, the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA, including the Privacy Rule, 45 C.F.R. 164.500, *et seq*., which generally requires covered entities to make reasonable efforts to limit the use and disclosure of PHI.

23.     On the homepage of the website of GoodRx's HeyDoctor telehealth services, the HIPAA emblem was displayed next to the statement "HIPAA Secure Patient Data Protected," representing to users that it complied with HIPAA's requirements for protecting and handling PHI.

24.     GoodRx also represented that it follows the Digital Advertising Alliance "Sensitive Data Principle" providing that its adherents "should not collect and use pharmaceutical prescriptions, or medical records about a specific individual for online behavioral advertising without consent."

### *GoodRx Solicited, Collected, and Widely Shared Users' PII/PHI Without Consent*

25.     To use GoodRx, users go to the home page of the website or to the mobile app and type in the drug name or a health condition in the search field and select the call to action button, which produces results on a new web page, including price comparisons and coupons for relevant products. Users may also enter information relating to their location, prescription dosage, form, quantity, and pharmacy. To access the coupons and receive refill reminders, users may provide an email address or phone number. If users create an account, GoodRx collects email addresses and phone numbers, and saves, tracks and alerts users about prescription price reductions, refill reminders, and drug recall and shortage information. For users who purchase the premium account for additional discount benefits, GoodRx obtains names, email addresses, street addresses, phone numbers, dates of birth, and payment information, as well as clinical and health information. GoodRx also tracks and saves a user's medication purchase history.

26.     In addition, GoodRx receives personal and health information from PBMs. When users purchase medication from their pharmacies using GoodRx coupons, the PBMs process the transactions and send claims records to GoodRx, containing the users' names, dates of birth, and information about the prescriptions filled. In this way, GoodRx is able to keep track of how many of its coupons are redeemed, for which prescriptions, and by whom. Based on the sensitivity of the data and the sheer quantity of records, GoodRx assembled a massive database of prescription medicine consumer behavior that advertisers and businesses would greatly value.

27.     GoodRx shared the PII/PHI that users provided to GoodRx with advertising platforms, including Facebook, Google and Criteo, without adequate notification or disclosure, and without users' knowing consent, in violation of health privacy laws and rules and its own privacy policy.

28.     GoodRx integrated third-party tracking tools, consisting of automated web beacons ("pixels") and trackers ("software development kits" or "SDKs"), in its website and mobile app to permit the other Defendants to intercept communications while in transit between Plaintiff and the GoodRx

website. These tracking tools shared user PII/PHI and user activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes.

29. While in transit, Defendants Criteo, Google, and Meta intercepted Plaintiff's private communications with GoodRx's website by use of a Facebook tracking pixel. Defendants were able to surreptitiously access all the technical records of Plaintiff's private use of Goodrx, including "Standard Events" data such as when a user landed on its website or launched its app, as well as "Custom Events" information relating to the users' PII/PHI, such as the contents of their searches, drug name, drug category, and health conditions associated the unique GoodRx coupon accessed by a user. GoodRx used descriptive labels for its custom events so that the fields were categorized as "Drug Name" and "Drug Category" for instance, to allow advertisers and third parties to know what data the fields referenced so they could analyze and monetize the data properly.

30. Between at least 2017 and November 2020, Defendants intercepted Plaintiff's GoodRx shared user data and activity information with Facebook using Facebook's tracking pixel on its websites and mobile app without users' consent. The intercepted information included drugs searched, the website URL often containing the medications' names, the health condition related to the medication, the medication dosage, quantity and form, pharmacy name, and the users' IP address, city, state and zip code. At times, GoodRx configured the pixel to automatically share with Facebook additional personal information, including the user's name, email, phone number, city, state, zip code, and gender.

31. GoodRx configured a Google tracking pixel on its website and an SDK on its mobile app to share user-provided information, including the drug name, drug type (such as "generic"), drug quantity, dosage and form, pharmacy ID, and related health conditions. GoodRx configured the Google pixel and SDK to share with Google the GoodRx users' phone numbers, emails, zip codes, and IP addresses. GoodRx configures Google Android and iOS SDKs to share users' latitude and longitude coordinates, and advertising IDs associated with the devices which unique identifiers used to target the users with advertisements.

32. GoodRx also shared user PII/PHI with Criteo and other third parties for unlawful purposes using internet tracking devices created and used by Criteo, including pixels and SDKs. Criteo used the

information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

33.     Since 2017, GoodRx has taken no action to limit how advertisers like Facebook, Google, and Criteo, could use the personal health information it shared with them. Rather, through standard terms of service agreements, GoodRx expressly permitted each of them to use Plaintiff's and Class members' PII/PHI for the provision of advertising services and products to their customers or for their own internal business purposes. This conduct was in direct contravention of GoodRx's promise that it would take steps to ensure that third parties that received Plaintiff's and Class members' PII/PHI were bound to comply with federal standards and confidentiality obligations, and to limit third-party use of users' information.

34.     Contrary to these promises in its privacy policy and assurances to users that GoodRx could be trusted with their PII/PHI, GoodRx had inadequate and deficient data protection, sharing, and accounting policies. GoodRx failed to implement and maintain programs for complying with laws governing the protection and disclosure of PII/PHI, and failed to implement and maintain adequate procedures to trace and adequately account for the PII/PHI it collected. GoodRx had no formal or sufficient policies or procedures in place with respect to notifying users of breaches to the confidentiality of their information, or with regard to data sharing practices in general.

35.     In addition, GoodRx used the information provided by Plaintiff and Class members to create and send targeted advertisements to them while they were online. GoodRx also used information obtained through its relationships with PBMs to create custom audiences—which entailed uploading the emails, phone numbers and mobile advertising IDs of users—to deliver advertisements to persons who used specific medications or were perceived to be candidates for GoodRx's telehealth services.

36.     Through their internet tracking devices, Facebook, Google, and Criteo intercepted, acquired, received, and used Plaintiff's and Class members' PII/PHI that they provided to GoodRx for their own purposes, including commercial gain, research, and analytics.

### *GoodRx Actively Concealed Defendants' Unlawful Conduct*

37.     The applicable statutes of limitations have been tolled as a result of Defendants' knowing and active concealment, statements in contradiction, and denial of the facts alleged herein.

38.    GoodRx made numerous false representations in its privacy policy and other materials that it restricted the use of Plaintiff's and Class members' PII/PHI to specific purposes, and through these representations actively concealed Defendants' data sharing practices.

39.    Defendants had exclusive knowledge regarding the use of Defendants' tracking devices to record user data, event and activity data, and the contents of communications and disclosure to third parties for unrestricted purposes. Plaintiff and Class members had no reasonable way to discover these activities on their own in light of Defendants' deceptive representations and omissions of material fact concerning their data sharing practices. As a result, Defendants are estopped from asserting statute of limitations or repose under the doctrine of fraudulent concealment.

40.    Facebook, Google, and Criteo continue to use the PII/PHI that they unlawfully intercepted, obtained, and received, and their conduct is continuing in nature. Their violations of the law represent ongoing, discrete and successive acts, representing continuing violations of the laws under which Plaintiff and Class members sue. Each continuing use and disclosure of Plaintiff's and Class members PII/PHI by Facebook, Google, and Criteo establishes liability for GoodRx under the claims asserted by Plaintiff and Class members.

41.    The earliest Plaintiff and Class members reasonably should have learned of the conduct forming the basis of their complaint, and when they actually did learn, was when they received notice of the complaint and settlement with the Federal Trade Commission, which received broad media attention. *See Federal Trade Commission v. GoodRx Holdings, Inc.*, No. 23-cv-460 (N.D. Cal. filed Feb. 1, 2023). Thus, their claims accrued on or around February 1, 2023, under the discovery rule applicable to their claims.

42.    To Plaintiff's knowledge, no other lawsuit based on the allegations underlying the FTC's enforcement action or this lawsuit had been filed before February 1, 2023.

43.    Pursuant to laws, regulations, industry standard practices, and voluntary undertakings to notify Plaintiff and Class members regarding the disclosure of their PII/PHI, Defendants owed duties to disclose the conduct that gives rise to Plaintiff's and Class members' claims, but actively concealed and

secretly profited off of their abuses of Plaintiff's and Class members' trust. Defendants should therefore be estopped from asserting any statute of limitations or repose.

44.     The Federal Trade Commission filed a complaint in the Northern District of California on February 1, 2023 against GoodRx for purposes of entering into a consent decree with GoodRx, imposing a civil penalty under the Breach Notification Rule, 16 C.F.R. § 318. As one of the conditions of the settlement, GoodRx must disseminate notification of its data sharing practices to users that it "shared identifiable information related to you, including health information without your permission." *See* Section V of Proposed Stipulated Order and Exhibit A, *Fed. Trade Comm'n v. GoodRx Holdings, Inc.*, No. 3:20-cv-460 (N.D. Cal. Feb. 1, 2023) (ECF No. 3-1).

### *Application of California Law to the Claims of Plaintiff and Class Members*

45.     California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company with its principal place of business in California. California has a greater interest in the claims of Plaintiff and Class members than any other state, and is most intimately concerned with the claims and outcome of this litigation.

46.     The principal place of business of GoodRx, in California, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the company's activities, including its data privacy and sharing functions and policy, financial, and legal decisions.

47.     When Plaintiff and Class members perform their searches on GoodRx's website, those searches are conducted on GoodRx's computers and servers in California.

48.     When Plaintiff and Class members input their PII/PHI on GoodRx's website, that information is input and stored on GoodRx's computers and servers in California.

49.     The resources and data relating to GoodRx's website and mobile app are created, maintained, accessible, and controlled by GoodRx employees and equipment located in California.

50.     GoodRx shares Plaintiff's and Class members' PII/PHI with Google, Facebook, and Criteo from GoodRx's computers and headquarters in California.

51.     Application of California law to the Class with respect to Plaintiff's and Class members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Class.

52.     Under California's choice of law principles, the common law of California applies to the common law claims of all Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law may be applied to non-resident consumer Plaintiff and Class members as against the resident defendants.

## CLASS ALLEGATIONS

53.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4), on behalf of Plaintiff and the Class defined as follows:

> All persons who used the GoodRx website or mobile app and had their data shared by GoodRx with Facebook, Google, Criteo, or other third parties for purposes other than treatment.

54.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

55.     Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Class to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

56.     The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

57.     The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

58.     **Numerosity**: The exact number of Class members is not available to Plaintiff, but it is clear that individual joinder is impracticable. Millions of people have used GoodRx since 2017. Members of the Class can be identified through Defendants' records or by other means.

59.     **Commonality**: Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether GoodRx disclosed to third parties their PII/PHI without authorization or lawful authority.

60.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and data sharing practices.

61.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other Class members. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members.

62.     **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

63.     The declaratory and injunctive relief sought in this case includes, but is not limited to:

a.   Entering a declaratory judgment against Defendants—declaring that Defendants' interception of Plaintiff's and Class members' PII/PHI among themselves and other third parties is in violation of the law;

b.   Entering an injunction against Defendants to prevent them from sharing Plaintiff's and Class members' PII/PHI among themselves and other third parties.

64.   **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

i.   Whether California law applies to each Class member's state and common law claims;

ii.   Whether Defendants violated the ECPA;

iii.   Whether Defendants violated the CMIA;

iv.   Whether Defendants violated the CIPA;

v.   Whether Defendants violated the CLRA;

vi.   Whether Defendants violated the UCL;

vii.   Whether Defendants violated Plaintiff's and Class members' right to privacy;

viii.   Whether Plaintiff and Class members are entitled to actual damages, enhanced damages, statutory damages, restitution, disgorgement, and other monetary remedies provided by equity and law;

ix.   Whether injunctive and declaratory relief, and other equitable relief is warranted.

65.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could

mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

66. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether GoodRx falsely promised in its privacy policy of September 12, 2017, that "GoodRx does not sell your personal medical data;"

b. Whether GoodRx misrepresented that GoodRx would disclose personal contact information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers;

c. Whether GoodRx's HeyDoctor telehealth services privacy policy misrepresented that it collected and shared user information with third-party service providers only for the limited purpose of providing access to its services;

d. Whether GoodRx misrepresented that it had in place contractual and technical protections that limit third-party use of user information and that it would seek user consent prior to sharing PII/PHI with third parties for purposes other than provision of its services;

e. Whether GoodRx misrepresented that any information it receives is stored under the same guidelines as any health entity that is subject to the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA;

f. Whether GoodRx misrepresented that it complied with HIPAA's requirements for protecting and handling PHI;

g. Whether GoodRx shared the PII/PHI that users provided to GoodRx with advertising platforms, including Facebook, Google and Criteo, without adequate notification or disclosure, and without users' knowing consent, in violation of health privacy laws and rules and its own privacy policy;

h.  Whether GoodRx integrated third-party tracking tools, consisting of automated web beacons ("pixels") and trackers ("software development kits" or "SDKs"), in its website and mobile app that shared user PII/PHI and user activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes;

i.  Whether GoodRx shared user data and activity information with Facebook using Facebook's tracking pixel on its websites and mobile app without users' consent;

j.  Whether GoodRx configured a Google tracking pixel on its website and an SDK on its mobile app to share user-provided information with Google;

k.  Whether GoodRx shared user PII/PHI with Criteo for unlawful purposes using internet tracking devices created and used by Criteo, including pixels and SDKs;

l.  Whether Google used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes;

m.  Whether Facebook used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes;

n.  Whether Criteo used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

## <u>COUNT I</u>
### Violation of the Electronic Communications Privacy Act
### 18 U.S.C. § 2511
### (Against All Defendants)

67.  Plaintiffs incorporate paragraphs 1–66 as if fully set forth herein.

68.  18 U.S.C. § 2511 applies to any person who:

- Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication (18 U.S.C. § 2511(1)(a));

- Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or

electronic communication in violation of this subsection (18 U.S.C. § 2511(1)(c));
and

- Intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection (18 U.S.C. § 2511(d)).

69. Through the use of tracking devices, such as SDKs and pixels, Defendants intentionally intercepted, endeavored to intercept, and procured other persons to intercept while in transit Plaintiff's and Class members' electronic communications of the PII/PHI provided by Plaintiff and Class members to GoodRx through its website and mobile app, including Plaintiff's and Class members' searches by drug names, health conditions, and other prescription medication-related information, and communications between Plaintiff and Class members and their pharmacies.

70. Defendants intentionally disclosed, and endeavored to disclose, the contents of Plaintiff's and Class members' electronic communications, knowing or having reason to know the information was obtained through the interception of an electronic communication by the disclosure of the contents of Plaintiff's and Class members' searches on GoodRx's website and mobile app and communications between Plaintiff and Class members and their pharmacies.

71. Defendants intentionally used and endeavored to use the contents of electronic communications between Plaintiff and Class members and GoodRx and between Plaintiff and Class members and their pharmacies to collect data for unrestricted uses, including commercial purposes, advertising, and analytics on Plaintiff and Class members while knowing and having reason to know the data was obtained by intercepting electronic communications.

72. Plaintiff and Class members did not know of, authorize, or consent to the interception, disclosure, or use of their electronic communications to third parties.

73. As a result of Defendants' unlawful conduct, Plaintiff and Class members had their private, electronic communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

74.     As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

75.     Because Plaintiff and Class members had their electronic communications intercepted, disclosed, and intentionally used by Defendants in violation of the ECPA, they have a right of action under 18 U.S.C. § 2520 for relief, including preliminary and other equitable or declaratory relief as may be appropriate, damages according to computations set for the subsection (c), punitive damages in appropriate cases, and reasonable attorneys' fees and other litigation costs reasonably incurred. 18 U.S.C. § 2520(a)–(c).

## COUNT II
**Violation of the California Confidentiality of Medical Information Act
Cal. Civ. Code § 56
(Against All Defendants)**

76.     Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

77.     GoodRx is subject to the CMIA pursuant to California Civil Code § 56.06(b) because it is a "business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage their information, or for the diagnosis, treatment, or management of a medical condition of the individual." Cal. Civ. Code § 56.06(b).

78.     Plaintiff's and Class members' PII/PHI constitutes "medical information" under the CMIA because it consists of individually identifiable information in possession of and derived from a provider of healthcare regarding Plaintiff's and Class members' medical history, mental and physical condition, and treatment.

79.     Defendants violated Cal. Civ. Code § 56.06(e) and 56.10 because they "disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by soliciting, intercepting, and receiving Plaintiff's and Class members' PII/PHI, and sharing it with advertisers and for advertising purposes.

80. Defendants violated Cal. Civ. Code § 56.101 because they negligently failed to create, maintain, preserve, store, abandon, destroy, and dispose of medical information in a manner that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiff's and Class members' PII/PHI, and sharing it with advertisers and for advertising purposes.

81. Defendants violated Cal Civ. Code § 56.36(b) because they negligently released confidential information and records concerning Plaintiff and Class members in violation of their rights under the CMIA.

82. Defendants violated Cal. Civ. Code §56.36(c)(2) because they are not licensed health care professionals and they knowingly and willfully obtained, disclosed, and used medical information in violation of the CMIA.

83. As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

84. As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT III**
**Aiding and Abetting Violations of the CMIA**
**(Against All Defendants)**

85. Plaintiff incorporates paragraphs 1–66 and the allegations in Count II as if fully set forth herein.

86. Defendants each individually and in concert with GoodRx or one another intercepted, received, disclosed, and used Plaintiff's and Class members' PII/PHI constituting medical information under the CMIA.

87. The pixels and SDKs, and other internet tracking devices, by which the interception, reception, disclosure, and use of Plaintiff's and Class members' PII/PHI was accomplished, were created and supplied by Facebook, Google, and Criteo. As a result, GoodRx and other Defendants carried out their

18

violations of the CMIA alleged in Count II with the substantial assistance of Facebook, Google, and Criteo.

88.     As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

89.     As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

## COUNT IV
### Violation of the California Invasion of Privacy Act
### Cal. Penal Code § 630, *et seq*.
### (Against All Defendants)

90.     Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

91.     The CIPA prohibits intentionally tapping or making any unauthorized connection with any wire, line, cable, or instrument; willfully and without consent reading, attempting to read, or learning the contents or meaning of messages or communications while in transit or passing over the wire, line, cable, or instrument; using, attempting to use information so obtained; and aiding, agreeing, employing, and conspiring with any person to unlawfully do or permit or cause to be done any of the foregoing. Cal. Penal Code § 631.

92.     The CIPA prohibits the intentional and unauthorized use of an electronic amplifying or recording device to eavesdrop upon or record confidential communications. Cal. Penal Code §632.

93.     Plaintiff and Class members were engaged in confidential communications with GoodRx because the circumstances reasonably indicated that the communication was confined to the parties, not the least of which is established by GoodRx's privacy policy and statements of privacy.

94.     Defendants intentionally tapped and made unauthorized connections to wires and willfully read and learned the communications between Plaintiff and Class members and GoodRx's website. Defendants used the information that was learned through such means to deliver advertisements to

Plaintiff and Class members and for other unlawful purposes. Defendants aided and agreed with one another to engage in the acts constituting violations of the CIPA.

95. Defendants used internet tracking devices, such as pixels and SDKs, which constitute electronic devices, to amplify or record Plaintiff's and Class members' communications with GoodRx, and to record and amplify their confidential communications consisting of their provision of PII/PHI.

96. Plaintiff and Class members were parties to confidential communications, and they did not provide their consent to the use of electronic amplifying or recording devices.

97. As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

98. As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT V**
**Violation of California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq*.**
**(Against GoodRx)**

99. Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

100. The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices, including representing that goods or services are of a particular standard, quality, or grade, if they are of another.

101. As alleged herein, GoodRx made numerous misrepresentations concerning its data security and sharing practices, including on its website and in its privacy policies.

102. GoodRx's representations that it would protect Plaintiff's and Class members' PII/PHI, would not share it with third parties for unrestricted uses, and would not sell it for advertising purposes were false.

103.    Contrary to these representations, GoodRx disclosed and allowed the interception, reception, and use, through internet tracking devices, such as pixels and SDKs, Plaintiff's and Class members' PII/PHI to Facebook, Google, Criteo, and other third parties.

104.    Plaintiff and Class members would not have shared their PII/PHI with GoodRx had they known that GoodRx's representations alleged herein were false.

105.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

106.    As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT VI**
**Violation of the California Unfair Competition Law**
**Cal. Bus. and Prof. Code § 17200, *et seq*.**
**(Against All Defendants)**

107.    Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

108.    Defendants' conduct as alleged herein was unfair within the meaning of the UCL. The unfair prong of the UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

109.    Defendants' conduct, as alleged herein was fraudulent within the meaning of the UCL. Defendants made deceptive misrepresentations and omitted known material facts in connection with the solicitation, interception, disclosure, and use of Plaintiff's and Class members' PII/PHI. Defendants actively concealed and continued to assert misleading statements regarding GoodRx's protection and limitation on the use of the PII/PHI. Meanwhile, Defendants were collecting and sharing Plaintiff's and Class members' PII/PHI without their authorization or knowledge in order to profit off of the information, and to deliver advertisements to Plaintiff and Class members, among other unlawful purposes.

110.    Defendants' conduct, as alleged herein, was unlawful within the meaning of the UCL because Defendants violated regulations and laws, including but not limited to HIPAA, the FTC Act (15 U.S.C. § 45), the ECPA, the CIPA, the Health Breach Notification Rule (16 C.F.R. § 318), and the CLRA.

111.    Had Plaintiff and Class members known Defendants would disclose and misuse their PII/PHI in contravention of GoodRx's representations, they would never have used GoodRx and would not have shared their information.

112.    Defendants' unlawful actions in violation of the UCL have caused and are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

113.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

114.    As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT VII**
**Invasion of Privacy**
**(Against All Defendants)**

115.    Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

116.    Defendants invaded the right to privacy of Plaintiff and Class members by soliciting, obtaining, disclosing, sharing, selling, and using Plaintiff's and Class members' PII/PHI for unauthorized purposes in direct contravention of GoodRx's promises and representations and Plaintiff's and Class members' reasonable expectations.

117.    Defendants intentionally disclosed to third parties and made use of Plaintiff's and Class members' PII/PHI for their own proprietary and commercial purposes, including advertising, data analytics, and other uses.

118.    Plaintiff and Class members had a reasonable expectation that Defendants would safeguard and maintain their PII/PHI as confidential and protect against unauthorized disclosure, partly because of

GoodRx's representations that it would, but also that other Defendants would not receive or use their PII/PHI in the first place.

119.    Defendants' conduct was and is highly offensive to a reasonable person with ordinary sensibilities. Persons with ordinary sensibilities, such as Plaintiff and Class members, have every right to be highly offended when a company induces them to share confidential information and then breaches that trust by sharing the information for purposes other than providing the desired services as contemplated by the parties to the transaction.

120.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

121.    As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, prays for a Court order:

A.    Certifying the Class under Rule 23(b)(2) or 23(b)(3), or certifying issues under Rule 23(c)(4), appointing Plaintiff as the Class Representative, and Plaintiff's counsel as Class Counsel;

B.    Finding Defendants' conduct was unlawful, as alleged herein, and entering judgment in favor of Plaintiff and the Class on the claims asserted herein;

C.    Awarding declaratory relief against Defendants;

D.    Awarding Plaintiff and Class members injunctive and other equitable relief, including restitution and disgorgement, as allowed by law or equity;

E.    Awarding Plaintiff and Class members nominal, statutory, actual, compensatory, consequential, incidental, and enhanced damages, as well as restitution and disgorgement as allowed by law or equity;

F.    Awarding pre- and post-judgment interest;

G.    Awarding reasonable attorneys' fees, expenses, and costs; and

H.    Granting such other relief as the Court deems just and appropriate.

### **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 17, 2023                  Respectfully submitted,


JOHN DOE, individually and on behalf of all others similarly situated,


By: /s/ Mark L. Javitch


Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
*mark@javitchlawoffice.com*

Thomas A. Zimmerman, Jr. (IL #6231944)*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*tom@attorneyzim.com*
**Pro Hac Vice* application pending*

*Attorneys for Plaintiff and the Putative Class*